1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LACEDRIC W. JOHNSON,

11              Plaintiff,                    No. 2:08-cv-1609 KJM KJN P

12         vs.

13   D.K. SISTO, Warden, et al.,

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis,

18   with an action filed pursuant to 42 U.S.C. § 1983.  On June 7, 2011, defendants Deur and

19   Shockley filed a motion to dismiss[1] on the grounds that the second amended complaint ("SAC")

20   fails to state cognizable claims under the Eighth Amendment, and that defendants are entitled to

21   qualified immunity.  On July 26, 2011, defendant Sisto filed a motion to dismiss on the grounds

22

23         [1]  On July 14, 2011, plaintiff filed an opposition (dkt. no. 107), and on July 20, 2011,
     defendants filed a reply (dkt. no. 109).  On August 8, 2011, plaintiff filed a second opposition.
24   When a party has raised new arguments or presented new evidence in a reply to an opposition,
     the court may permit the other party to counter the new arguments or evidence.  El Pollo Loco v.
25   Hashim, 316 F.3d 1032, 1040-41 (9th Cir. 2003).  Here, defendants' reply addressed the
     argument in plaintiff's first opposition; the reply raised no new theories.  Accordingly, plaintiff's
26   second opposition is stricken.  (Dkt. No. 112.)

that the SAC fails to state a cognizable Eighth Amendment claim, and that defendant Sisto is

entitled to qualified immunity.  For the reasons set forth below, the undersigned recommends that

both motions be granted.

II.  Plaintiff's Second Amended Complaint

Plaintiff is proceeding on the SAC filed February 22, 2010, against sixteen

defendants, alleging three separate causes of action.  (Dkt. Nos 23 (SAC); 25 (Order) at 3.)[2]

Defendants Traquina, Freeman, Singh, Eck, Cate, Gentry, Dechant, Nuerhring, and Greer have

filed an answer.  (Dkt. No. 36.)  Defendants Shockley, Sisto, and Deur filed motions to dismiss.

On July 23, 2006, plaintiff was ordered to cuff up and, after cuffing up, plaintiff

alleges Correctional Officer Sillivan became aggressive, so plaintiff ran toward staff and camera

coverage, allegedly for plaintiff's safety due to the isolated area in which plaintiff was cuffed.

(Dkt. No. 23 at 5.)  Plaintiff alleges he stopped in front of the "B" control booth, at which time

Sillivan, running full speed, allegedly "tackled plaintiff and knocked him face down to the

ground with the full weight of [Sillivan's] body."  (Id.)  While plaintiff was laying on the ground,

plaintiff alleges defendant Freeman "ran over and did a 'knee-drop' with the full weight of his

body on the plaintiff's back and shoulder causing instant pain."  (Id.)

After the staffs' alleged use of force (dkt. no. 23 at 58-59), plaintiff was escorted

to the primary clinic to be medically cleared for placement in administrative segregation ("ad

seg").  (Dkt. No. 23 at 62.)  Plaintiff alleges defendant Deur, a Registered Nurse,

> interviewed plaintiff about his injuries, and [plaintiff] informed
> Deur he sustained back injuries and numbness.  She failed to
> evaluate, treat or document plaintiff's injuries on 7219 medical
> form and simply disregarded his injury complaint with no intention
> of providing plaintiff any medical care.  Plaintiff described the pain

_____

[2]  Defendants Jones and Petersen were voluntarily dismissed on June 8, 2011.  (Dkt. No. 95.)  Defendant Fleischman was dismissed on September 8, 2011.  (Dkt. No. 118.)  The correct address of defendant Noriega was recently located, and a waiver of service of process was signed on December 16, 2011.  (Dkt. No. 123.)  Plaintiff also named thirty-five defendants who were dismissed on June 24, 2010.

1    in the back and shoulder but couldn't describe[] numbness.  Ex. D-
2    17.

3  (Dkt. No. 23 at 6.)  Exhibit D-17 is a copy of defendant Deur's medical report of injury, dated

4  July 23, 2006, which states no injuries were found, plaintiff was ambulatory, and that plaintiff's

5  statement of the circumstances of the injury or unusual occurrence was "don't know how to

6  describe it."  (Dkt. No. 23 at 96.)  Using the 24 hour clock, the report of injury reflects that the

7  alleged incident occurred at 1630, and that defendant Deur was notified at 1643, saw plaintiff at

8  1644, and released plaintiff at 1645, with the notation "Cleared for housing per custody."  (Id.)

9        Plaintiff acknowledges he was then placed on contraband surveillance watch

10  ("CSW")[3] "for possession of concealed contraband," (dkt. no. 23 at 6), beginning on July 23,

11  2006, through August 4, 2006, during which plaintiff alleges he was "tortured."  (SAC at 4-5.)

12  Plaintiff was placed in an administrative segregation cell and was restrained to a bunk on his

13  back by four-point leather restraints.  (SAC at 6.)  Plaintiff was clothed in only boxer shorts until

14  July 27, 2006, when defendant Nuehring ordered Correctional Officer Jones to put plaintiff in a

15  jumpsuit, which plaintiff contends was too small.  (SAC at 7.)

16        During the CSW, plaintiff alleges he was subjected to the following conditions:

17  continuous exposure to air conditioning; insufficient bedding, which consisted of one thin sheet;

18  insufficient clothing, which was only one pair of boxer shorts until July 27, 2006, when plaintiff

19  was provided a jumpsuit that was allegedly too small and cut off plaintiff's circulation; extremely

20  limited exercise; constant exposure to light and noise; and limited movement during sleep.  (SAC

21  at 6-7.)  Plaintiff alleges he suffered back and neck pain, delusions and anxiety, high blood

22  pressure and high cholesterol, stress and sleep deprivation.  (SAC at 7.)  On August 4, 2006,

23  plaintiff allegedly suffered an onset of paraplegia of the lower extremities requiring plaintiff's

24

25    [3]  A contraband watch has been described as "a special temporary confinement used to
determine whether an inmate has ingested or secreted contraband in his digestive tract and, if so,
26  to recover it."  Chappell v. Mandeville, 2009 WL 900151 at *3, n.5 (E.D. Cal. March 31, 2009).

1   evacuation by helicopter to the John Muer Medical Center in Walnut Creek, California.  (SAC at

2   12.)

3           Further, plaintiff alleges that on July 27, 2006, defendant Sisto headed an ad-seg

4   committee meeting at plaintiff's cell door, while plaintiff "lay spread eagle in boxer shorts."

5   (SAC at 8.)  Plaintiff alleges that on July 27, 2006, defendant Shockley "came to the cell door to

6   observe plaintiff," and on July 28, 2006, defendant Shockley led a "tour of numerous officials of

7   both genders as plaintiff lay secured to a bunk on display."  (SAC at 8.)

8           Plaintiff also alleges defendant Sisto "promulgated and endorsed a 4-point

9   restraint immobilization intensive observation CW policy/procedure to investigate plaintiff for

10  possession of concealed contraband," citing prison disciplinary RVR S1-06-08-0393.[4]  (SAC at

11  6.)  The appended prison disciplinary, Log No. SOL 07-0123, dated February 26, 2007, reflects

12  defendant Sisto signed a second level appeal response addressing plaintiff's claims that his due

13  process rights were violated during the July 29, 2006, hearing on the rules violation report

14  ("RVR"), Log S1-06-07-0393, and that the RVR was false.  (Dkt. No. 23 at 24.)  Defendant Sisto

15  denied the appeal.  (Id.)

16  III.  Causes of Action

17          In connection with the defendants who have moved to dismiss plaintiff's claims

18  herein, pursuant to the court's March 26, 2010 order, plaintiff stated a viable cause of action

19  against defendants Sisto and Shockley for unlawful conditions of confinement (Claim II), and

20  against defendant Deur for deliberate indifference to a serious medical need (Claim III).  (Dkt.

21  No. 25 at 3.)

22  IV.  Legal Standards - Motion to Dismiss

23          Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

24  dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

25  ─────────────────────

26      [4] Plaintiff refers to RVR S1-06-08-0393.  (SAC at 6.)  However, his Exhibit A references
    RVR S1-06-07-0393.

4

1   In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

2   court must accept as true the allegations of the complaint in question, Erickson v. Pardus,

3   551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins

4   v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th

5   Cir. 1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain

6   more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements

7   of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other

8   words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

9   statements do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a

10  claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at

11  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

12  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13  Iqbal, 129 S. Ct. at 1949.  Attachments to a complaint are considered to be part of the complaint

14  for purposes of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard

15  Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

16          A motion to dismiss for failure to state a claim should not be granted unless it

17  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

18  would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In general, pro

19  se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

20  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.

21  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's

22  liberal interpretation of a pro se complaint may not supply essential elements of the claim that

23  were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

24          A.  Conditions of Confinement

25          Defendants Shockley and Sisto move to dismiss plaintiff's claim that defendants

26  Sisto and Shockley violated the Eighth Amendment by subjecting plaintiff to unconstitutional

1  prison conditions.

2         i.  Legal Standard for Conditions of Confinement Claim

3        In order to state a claim for violation of the Eighth Amendment, the plaintiff must

4  allege facts sufficient to support a claim that prison officials knew of and disregarded a

5  substantial risk of serious harm to the plaintiff.  Farmer v. Brennan, 511 U.S. 825, 847 (1994);

6  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  A plaintiff who claims that the conditions

7  of his confinement fall below the constitutional standard must make two showings.  "First, the

8  plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious' to form

9  the basis for an Eighth Amendment violation."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.

10  2000) (citation omitted).  "The Constitution . . . 'does not mandate comfortable prisons, and only

11  those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently

12  grave to form the basis of an Eighth Amendment violation."  Wilson v. Seiter, 501 U.S. 294, 298

13  (1991) (citations omitted).  Second, the prisoner must make a "subjective" showing that prison

14  officials

15        acted with the requisite culpable intent such that the infliction of
      pain is "unnecessary and wanton."  In prison conditions cases,

16        prison officials act with the requisite culpable intent when they act
      with deliberate indifference to the inmate's suffering.

17

18  Anderson v. County of Kern, 45 F.3d 1310, 1312 (9th Cir. 1995).

19        ii.  Application

20        a.  Defendant Shockley

21        Plaintiff's allegations against defendant Shockley in both the SAC, and as

22  supplemented in plaintiff's opposition, fail to state a cognizable conditions of confinement claim

23  in violation of the Eighth Amendment.  First, the alleged facts that defendant Shockley came to

24  plaintiff's cell on July 27, 2006, to observe plaintiff, or that defendant Shockley led a "tour" of

25  men and women "as plaintiff lay secured to a bunk on display," on July 28, 2006, without more,

26  do not rise to the level of deliberate indifference.  Civil rights liability under 42 U.S.C. § 1983

1  may be imposed on a defendant if the plaintiff can demonstrate that the defendant proximately

2  caused the deprivation of a federally protected right.  Leer v. Murphy, 844 F.2d 628, 634 (9th

3  Cir. 1988).  In the complaint, "[a] plaintiff must allege facts, not simply conclusions, that show

4  that an individual was personally involved in the deprivation of his civil rights."  Barren v.

5  Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  Plaintiff does not state that defendant Shockley

6  personally participated in plaintiff's physical restraint, or was responsible for plaintiff's

7  placement and retention in the CSW, or for monitoring plaintiff during the CSW.  Plaintiff

8  alleges no facts demonstrating that defendant Shockley played any role in the CSW.  Indeed,

9  plaintiff alleges that defendant Shockley only observed plaintiff on two separate occasions of

10 unspecific duration or scope.

11        Second, a prison official may be liable under the Eighth Amendment for denying

12 humane conditions of confinement only if he knew that the inmate faced a substantial risk of

13 harm and disregarded that risk by failing to take reasonable measures to abate it.  Farmer, 511

14 U.S. at 837-45.  Here, plaintiff was restrained to a bunk in four point restraints.  It is unclear

15 whether plaintiff was clothed in his boxer shorts at the time defendant Shockley first observed

16 plaintiff in restraints, or whether he had changed into the jumpsuit by that time.  But, even if

17 defendant Shockley viewed plaintiff clothed in boxer shorts and restrained to the bunk, plaintiff

18 has alleged no facts demonstrating that defendant Shockley was aware that plaintiff was at risk.

19 Plaintiff does not describe the duration of time that defendant Shockley observed plaintiff on the

20 two occasions.  Plaintiff does not allege any facts suggesting Shockley was aware of how long

21 plaintiff had been placed in restraints, the reason for the restraints, or whether the restraints were

22 applied continuously.

23        Plaintiff now claims that the alleged violation of plaintiff's constitutional rights

24 was "apparent from a visual stance," because plaintiff was "secured at the wrist above the head

25 and at the ankles spread-eagle to the four corners of the bunk in inadequate clothing and

26 bedding," and Cal. Code Regs. tit. 15 § 3268.2 required plaintiff to be restrained in waist

1    restraints.  (Dkt. No. 107 at 5-6.)  Plaintiff alleges that because defendant Shockley was acting as

2    Associate Warden, he had knowledge of Title 15 regulations, policies and procedures in restraint

3    use and CSW procedure, yet failed to act to protect plaintiff from unsafe conditions of

4    confinement.

5                  However, the court is unable to draw such an inference from such bare factual

6    allegations.  Observing plaintiff on two occasions, for an unknown length of time, even

7    restrained above the head and at the ankles, does not suggest defendant Shockley became aware

8    of an allegedly "tortuous" condition of confinement as described by plaintiff, or that defendant

9    Shockley's subsequent failure to act constituted deliberate indifference.  Plaintiff alleges no facts

10   demonstrating that defendant Shockley was aware that plaintiff had been inappropriately

11   restrained for four days, or was otherwise aware of the allegedly "tortuous" conditions of

12   confinement as described by plaintiff.  By the next day, plaintiff was clothed in a jumpsuit, and

13   plaintiff provides no further factual allegations to support his claim that defendant Shockley's

14   observance of plaintiff in restraints violated plaintiff's Eighth Amendment rights.

15                  Also, in the allegation that defendant Shockley "observed" plaintiff on either day,

16   plaintiff fails to allege that any interaction took place between plaintiff and defendant Shockley.

17   Plaintiff does not allege that he asked defendant Shockley for assistance, or that Shockley was

18   somehow made aware plaintiff was experiencing distress or needed attention.  Where a prisoner

19   alleges injuries stemming from unsafe conditions of confinement, prison officials may be held

20   liable only if they acted with "deliberate indifference to a substantial risk of serious harm."

21   Frost, 152 F.3d at 1128.  Thus, plaintiff's allegations in the opposition that, during the first week

22   plaintiff was placed in restraints, defendant Shockley observed plaintiff on one occasion, and

23   "led a tour of people to observe plaintiff" the next day, are insufficient to demonstrate that

24   defendant Shockley knew of and disregarded a substantial risk of serious harm to plaintiff.

25   Plaintiff has alleged no facts demonstrating that defendant Shockley was aware plaintiff endured

26   any physical or medical distress or pain, or whether plaintiff did not have access to medical care

1   while plaintiff was restrained.

2           Finally, plaintiff has also failed to allege facts demonstrating that defendant

3   Shockley was legally required to act under the circumstances.  "A person 'subjects' another to

4   the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative

5   act, participates in another's affirmative acts, or omits to perform an act which he is legally

6   required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588

7   F.2d 740, 743 (9th Cir. 1978).  Plaintiff now claims that defendant Shockley is an Associate

8   Warden, was familiar with restraint policy, and had the authority to intervene.  (Dkt. No. 107 at

9   6.)  However, plaintiff fails to allege facts demonstrating defendant Shockley was aware

10  plaintiff's restraint posed any danger to plaintiff's health, or was inflicting pain, such that

11  defendant Shockley was aware of any need to intervene on plaintiff's behalf.  Plaintiff has also

12  failed to demonstrate defendant Shockley had a duty to intervene.

13          For all of the above reasons, plaintiff has failed to state a cognizable civil rights

14  claim against defendant Shockley, and the motion to dismiss defendant Shockley should be

15  granted.  The facts as pled demonstrate that plaintiff is unable to amend his claim against

16  defendant Shockley to rectify the above deficiencies.  Accordingly, plaintiff should not be

17  permitted to amend the SAC to reallege his claims against defendant Shockley.[5]

18                          b.  Defendant Sisto

19          Plaintiff's claims against defendant Sisto fail for the same reasons plaintiff's

20  claims against defendant Shockley fail.  Plaintiff alleges defendant Sisto headed up an ad seg

21  committee meeting at plaintiff's cell door on July 27, 2006.  In his opposition, plaintiff claims

22

23          [5]  The record also supports this decision.  This action is proceeding on plaintiff's second
    amended complaint, which was plaintiff's third effort "to draft a pleading that adequately states
    the factual basis of a cause of action against each defendant."  (Dkt. No. 25 at 4.)  On March 26,

24  2010, plaintiff was admonished that he is now required to show good cause to further amend.
    (Id.)  On September 15, 2010, the court issued a pretrial scheduling order.  Now that the

25  scheduling order has issued, in order to seek leave to amend at this late stage of the proceedings,
    plaintiff must also demonstrate his diligence under Rule 16 of the Federal Rules of Civil

26  Procedure.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).

defendant Sisto failed to intervene after Sisto "personally observed" plaintiff in four point restraints on July 27, 2006.  (Dkt. No. 114 at 6.)  However, plaintiff fails to set forth facts as to how long Sisto observed plaintiff, or whether Sisto was aware plaintiff was in CSW, or for how long plaintiff had been restrained.  Defendant Sisto's observance of plaintiff in restraints, on one occasion, is insufficient to demonstrate deliberate indifference.  While plaintiff alleges defendant Sisto was heading up an ad seg committee meeting, plaintiff raises no factual allegations concerning the nature of the meeting, i.e. whether the members were discussing inmates housed in ad seg, or whether the members were discussing administrative or other matters.  The simple reference to this meeting, without more, is insufficient to raise an inference that defendant Sisto was aware of plaintiff's situation.

Plaintiff appears to contend defendant Sisto was responsible based on his role as Warden.  (Id.)  As set forth above, the civil rights statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Duffy, 588 F.2d at 743.

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v.

1  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where

2  there is no evidence of personal participation).  Vague and conclusory allegations concerning the

3  involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board

4  of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of

5  personal participation is insufficient).

6          Plaintiff has alleged no facts as to defendant Sisto's personal participation in the

7  CSW, other than to claim Sisto witnessed plaintiff's situation on one occasion, at some point

8  during the fourth day plaintiff was held in CSW.  Plaintiff claims Sisto had the authority to

9  intervene, but fails to demonstrate facts suggesting Sisto was aware of any need to intervene.

10 Plaintiff does not allege that his continued restraint was approved by defendant Sisto.  Plaintiff

11 appears to contend that defendant Sisto should have been aware that plaintiff's rights were

12 violated when Sisto viewed plaintiff restrained to a fixed object, in four point restraints.

13 However, viewing plaintiff in four point restraints on one occasion would not, without more,

14 raise an inference that defendant Sisto was aware of a violation.  Also, plaintiff does not allege he

15 spoke with Sisto or attempted to make Sisto aware that plaintiff required assistance.  Plaintiff

16 includes generic arguments as to all defendants, and re-argues his allegations concerning those

17 defendants responsible for the CSW, but fails to articulate how those allegations pertain to

18 defendant Sisto, who observed plaintiff only once, and for an unspecified period of time, during

19 the CSW.  Supervisory defendants are liable for their own misconduct, not for the misconduct of

20 their subordinates.  Iqbal, 129 S. Ct. at 1949.  Plaintiff fails to allege facts demonstrating

21 defendant Sisto was deliberately indifferent based on Sisto's role as Warden.

22         Finally, plaintiff alleges that defendant Sisto, and other defendants, promulgated a

23 "four point restraint immobilization intensive observation CSW policy/procedure" which

24 resulted in plaintiff being "secured on his back for eleven days [until] plaintiff was air lifted to

25 John Muer Medical Center."  (Dkt. No. 23 at 6.)  In support of this claim, plaintiff cites a prison

26 disciplinary in which defendant Sisto denied plaintiff's administrative appeal concerning the

1   CSW.  Plaintiff also appends a copy of the CDCR DOM Section 52050 "Arrest Search and

2   Seizure," dated August 2006, which is signed by defendants Sisto and Traquina.  (Dkt. No. 114

3   at 24-29.)  Plaintiff alleges defendant Sisto implemented this allegedly more lenient policy <u>after</u>

4   plaintiff was flown to John Muir Medical Center on August 4, 2006.  (Dkt. No. 114 at 9.)

5           Supervisory officials may be liable even without overt personal participation in

6   the offensive act if they promulgated or "implemented a policy so deficient that the policy 'itself

7   is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

8   <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>,

9   880 F.2d 1040, 1045 (9th Cir. 1989).

10          Defendant Sisto contends plaintiff alleges no additional facts indicating that Sisto

11  promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of

12  constitutional rights' and is 'the moving force of the constitutional violation.'"  <u>Hansen</u>, 885 F.2d

13  at 646.  Defendant argues that plaintiff's simply restates his conclusory statement that defendant

14  Sisto promulgated and implemented the CSW policy imposed on plaintiff, without additional

15  factual support, which defendant contends is insufficient.

16          Although plaintiff alleges that defendant Sisto promulgated the policy used to

17  subject plaintiff to the CSW at issue here, plaintiff has failed to allege additional facts linking

18  defendant Sisto to the CSW policy.  The fact that defendant Sisto implemented a search policy in

19  August of 2006, after plaintiff's release from the CSW, does not demonstrate, or raise an

20  inference, that defendant Sisto promulgated or implemented the CSW policy in effect at the time

21  plaintiff was held in the CSW at issue here.  Rather, the alleged corrective policy suggests that

22  defendant Sisto believed the policy needed to be revised.  Moreover, plaintiff fails to allege facts

23  demonstrating that there was a policy in place that authorized the conditions imposed on

24  plaintiff.  Indeed, plaintiff argues that defendant Sisto "as Warden and subordinate staff at CSP-

25  Solano [were] deliberate[ly] indifferent based upon the fact they failed to follow their own rules

26  and policy procedures."  (Dkt. No. 114 at 8.)

1    Thus, plaintiff has not alleged facts demonstrating that the conditions to which

2  plaintiff was subjected were administered pursuant to a policy defendant Sisto implemented.

3  Plaintiff has not alleged sufficient facts supporting the existence of a policy or practice of

4  subjecting inmates to four point restraints for extended periods of time or under the conditions as

5  alleged by plaintiff, or linking defendant Sisto to such a policy.  Plaintiff cites no other incidents

6  where an inmate was subjected to such an extended period of similar restraint.  Thus, plaintiff's

7  policy claim against defendant Sisto should also be dismissed.

8    For all of the above reasons, defendant Sisto's motion to dismiss should be

9  granted.

10    B.  Medical Care

11    Defendant Deur moves to dismiss plaintiff's claim that defendant Deur was

12  deliberately indifferent to plaintiff's serious medical needs.

13    i.  Legal Standard for Deliberate Indifference to Medical Needs

14    In order to state a claim for relief under the Eighth Amendment for inadequate

15  prison medical care, plaintiff must allege "deliberate indifference to serious medical needs." Jett

16  v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104

17  (1976).  A medical need is serious if "the failure to treat a prisoner's condition could result in

18  further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v.

19  Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other

20  grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Deliberate

21  indifference is proved by evidence that a prison official "knows of and disregards an excessive

22  risk to inmate health or safety; the official must both be aware of the facts from which the

23  inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

24  inference." Farmer, 511 U.S. at 837.  Mere negligence is insufficient for Eighth Amendment

25  liability.  Frost, 152 F.3d at 1128.

26    Whether a defendant had requisite knowledge of a substantial risk is a question of

13

fact and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious.  Farmer, 511 U.S. at 842.  While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true.  Id.  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).  Deliberate indifference may be shown by the way in which prison officials provide medical care, Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988), or "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm."  Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).  Deliberate indifference in the medical context may also be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need.  Jett, 439 F.3d at 1096.  A mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a § 1983 claim.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### ii. Application to Defendant Deur

Defendants argue that plaintiff failed to state facts showing that his pain or numbness in his back or shoulder constituted a serious medical need.  Defendants state plaintiff set forth no facts showing that plaintiff told Deur of symptoms or circumstances, other than back pain and numbness, indicating a serious medical condition; nor that Deur knew how plaintiff was injured; nor that plaintiff had any obvious signs of injury, such as swelling, bleeding or bruising. (Dkt. No. 94 at 8.)  Defendants contend that plaintiff's allegations state, at most, a difference of opinion as to appropriate medical care, or a negligent failure to discover an injury.  In the SAC, plaintiff claims that defendant Deur "failed to evaluate, treat or document plaintiff's injuries, with no intention of providing plaintiff any medical care."  (Dkt. No. 23 at 6.)  In his opposition, plaintiff now states he told Deur that plaintiff suffered back pain and numbness because two

14

1   guards tackled him.  (Dkt. No. 107 at 3.)  Plaintiff argues that Deur "denied plaintiff medical

2   evaluation or treatment" for injuries he "made known to her" which was a "direct causation of

3   pain and suffering" during the subsequent CSW.  (Dkt. No. 107 at 6.)

4          Mere negligence on the part of the defendant is not sufficient to establish liability,

5   but rather, the defendant's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost, 152

6   F.3d at 1128.  Also, negligence or medical malpractice in diagnosing or treating a condition is

7   not a constitutional violation.  Estelle, 429 U.S. at 106; Hallett, 296 F.3d at 744.

8          The medical record completed by defendant Deur, a Registered Nurse, and

9   provided by plaintiff (dkt. no. 23 at 96), reflects plaintiff was seen by defendant Deur for "pre-

10  ad/seg admission" on July 23, 2006, for an incident that occurred at 1630 (using a 24-hour

11  clock).  (Id.)  Plaintiff was ambulatory, arrived at 1643, and was seen by defendant Deur at 1644.

12  Defendant Deur described plaintiff's statement of the injury as, "don't know how to describe it."

13  (Id.)  Deur noted, however, that no injuries were found, and that there was no pepper spray

14  exposure.  (Id.)  At 1645, plaintiff was "cleared for housing per custody."  (Id.)

15         Plaintiff fails to demonstrate that defendant Deur knew of and disregarded an

16  excessive risk to plaintiff's health or safety.  Plaintiff alleges no facts demonstrating that plaintiff

17  was suffering from a bulging disk at the time he presented to Deur, or that defendant Deur knew

18  plaintiff was suffering from a bulging disk in his back.  Also, plaintiff alleges no facts that Deur

19  knew that plaintiff was to undergo a CSW, or would undergo a CSW for a period of twelve days

20  (July 23, 2006, to August 4, 2006), or even what type of restraints would be used if Deur was

21  informed plaintiff was to be placed in a CSW.  The medical record reflects "pre-ad seg

22  admission," and that plaintiff was "cleared for housing," and does not state plaintiff would be

23  subject to a CSW.

24         Plaintiff was ambulatory when seen by Deur.  In his opposition, plaintiff states

25  Deur "partially documented the interview, and plaintiff conceded in the SAC that he "couldn't

26  describe numbness" (dkt. no. 23 at 6), which is consistent with Deur's note in the medical record.

1  Despite plaintiff's allegations that Deur's actions (or inactions) caused him pain and suffering

2  during the CSW, plaintiff does not allege he was suffering from severe pain when he presented to

3  Deur, and plaintiff alleges no visible injuries were evident at that time.  Plaintiff does allege that

4  he made "dozens" of complaints of pain to CSW officers and medical staff from July 23, 2006

5  through August 4, 2006.  (Dkt. No. 23 at 12.)  However, plaintiff does not allege that Deur

6  treated plaintiff during the CSW, or that defendant Deur was responsible for treating plaintiff

7  during the CSW.

8          While the court is troubled by the minuscule amount of time defendant Deur spent

9  with plaintiff prior to his placement in ad seg,[6] plaintiff has not alleged facts demonstrating

10  Deur's failure to take additional steps was wanton.  Plaintiff has failed to allege facts showing

11  Deur was aware of a serious medical need, yet deliberately failed to treat it.  Plaintiff was

12  ambulatory at the time he was seen by Deur, and was not complaining of severe pain.  Plaintiff

13  has failed to allege facts demonstrating that during the one minute Deur spent with plaintiff, Deur

14  was aware of a serious medical need that required additional medical treatment.  Plaintiff must

15  allege an omission sufficiently harmful to demonstrate defendant Deur was deliberately

16  indifferent when she failed to provide medical treatment that plaintiff now believes Deur should

17  have provided.  Plaintiff has failed to do so.  Accordingly, defendant Deur's motion to dismiss

18  should be granted.

19  V.  Qualified Immunity

20          Defendants also contend that they are entitled to qualified immunity.  In light of

21  the above recommendations, the court need not address this alternative argument.

22  VI.  Conclusion

23          For all of the reasons set forth above, this court recommends that defendant's

24  motion to dismiss be granted, and plaintiff's claims against defendants Shockley, Sisto, and Deur

25

26          [6]  The times recorded on the medical record reflect Deur spent one minute with plaintiff.

1  be dismissed, without leave to amend, based on plaintiff's failure to state a cognizable civil rights

2  claim.  Fed. R. Civ. P. 12(b)(6).

3       IT IS HEREBY RECOMMENDED that:

4       1.  Defendant Shockley's June 7, 2011 motion to dismiss (dkt. no. 94) be granted;

5       2.  Defendant Sisto's July 26, 2011 motion to dismiss (dkt. no. 110) be granted;

6       3.  Defendant Deur's June 7, 2011 motion to dismiss (dkt. no. 94) be granted; and

7       4.  Plaintiff's claims against defendants Sisto, Shockley and Deur be dismissed.

8       These findings and recommendations are submitted to the United States District

9  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

10 one days after being served with these findings and recommendations, any party may file written

11 objections with the court and serve a copy on all parties.  Such a document should be captioned

12 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

13 objections shall be filed and served within fourteen days after service of the objections.  The

14 parties are advised that failure to file objections within the specified time may waive the right to

15 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16 DATED:  January 26, 2012

18 KENDALL J. NEWMAN
19 UNITED STATES MAGISTRATE JUDGE

20 john1609.mtd2

17