IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LACEDRIC W. JOHNSON,

    Plaintiff,                       No. 2:08-cv-1609 KJM KJN P

    vs.

D.K. SISTO, Warden, et al.,

    Defendants.[1]               FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983. On January 27, 2012, defendant Noriega filed a motion to dismiss on the grounds that the second amended complaint ("SAC") fails to state cognizable claims under the Eighth Amendment, and that defendant Noriega is entitled to qualified immunity. For the reasons set forth below, the undersigned recommends that defendant Noriega's motion be granted in part and denied in part.

////

---

[1] Defendants Shockley, Sisto, and Deur were dismissed on March 31, 2012. (Dkt. No. 130.) Defendant Fleischman was dismissed on September 8, 2011. (Dkt. No. 118.) Defendants Jones and Petersen were voluntarily dismissed on June 8, 2011. (Dkt. No. 95.) Plaintiff also named thirty-five defendants who were dismissed on June 24, 2010.

II. <u>Plaintiff's Second Amended Complaint</u>

Plaintiff is proceeding on the SAC filed February 22, 2010, alleging three separate causes of action. (Dkt. Nos 23 (SAC); 25 (Order) at 3.) Defendants Traquina, Freeman, Singh, Eck, Cate, Gentry, Dechant, Nuerhring, and Greer filed an answer. (Dkt. No. 36.)

On July 23, 2006, plaintiff was ordered to cuff up and, after cuffing up, plaintiff alleges Correctional Officer Sillivan became aggressive, so plaintiff ran toward staff and camera coverage, allegedly for plaintiff's safety due to the isolated area in which plaintiff was cuffed. (Dkt. No. 23 at 5.) Plaintiff alleges he stopped in front of the "B" control booth, at which time Sillivan, running full speed, allegedly "tackled plaintiff and knocked him face down to the ground with the full weight of [Sillivan's] body." (<u>Id.</u>) While plaintiff was laying on the ground, plaintiff alleges defendant Freeman "ran over and did a 'knee-drop' with the full weight of his body on the plaintiff's back and shoulder causing instant pain." (<u>Id.</u>)

After the staffs' alleged use of force (dkt. no. 23 at 58-59), plaintiff was escorted to the primary clinic to be medically cleared for placement in administrative segregation ("ad seg"). (Dkt. No. 23 at 62.) After plaintiff was briefly seen by defendant Deur, a Registered Nurse, plaintiff was "Cleared for housing per custody." (Dkt. No. 23 at 96.)

Plaintiff acknowledges he was then placed on contraband surveillance watch ("CSW")[2] "for possession of concealed contraband," (dkt. no. 23 at 6), beginning on July 23, 2006, through August 4, 2006, during which plaintiff alleges he was "tortured." (SAC at 4-5.) Plaintiff was placed in an administrative segregation cell and was restrained to a bunk on his back by four-point leather restraints. (SAC at 6.) Plaintiff was clothed in only boxer shorts until July 27, 2006, when defendant Nuehring ordered Correctional Officer Jones to put plaintiff in a jumpsuit, which plaintiff contends was too small. (SAC at 7.)

---

[2] A contraband watch has been described as "a special temporary confinement used to determine whether an inmate has ingested or secreted contraband in his digestive tract and, if so, to recover it." <u>Chappell v. Mandeville</u>, 2009 WL 900151 at *3, n.5 (E.D. Cal. March 31, 2009).

During the CSW, plaintiff alleges he was subjected to the following conditions: continuous exposure to air conditioning; insufficient bedding, which consisted of one thin sheet; insufficient clothing, which was only one pair of boxer shorts until July 27, 2006, when plaintiff was provided a jumpsuit that was allegedly too small and cut off plaintiff's circulation; extremely limited exercise; constant exposure to light and noise; and limited movement during sleep. (SAC at 6-7.) Plaintiff alleges he suffered back and neck pain, delusions and anxiety, high blood pressure and high cholesterol, stress and sleep deprivation. (SAC at 7.)

On August 4, 2006, after being confined to restraints for eleven days, plaintiff was released from the four point restraints and allegedly placed in the middle of the cell, naked. (SAC at 11.) After defecating, plaintiff allegedly suffered an onset of paraplegia of the lower extremities. (SAC at 11-12.) Defendant Gentry pushed his emergency button, and numerous officers and medical staff rushed into plaintiff's cell, lifting plaintiff onto a gurney, and rolled him twenty feet to ad seg medical. (SAC at 12.) Plaintiff was "evaluated by Dr. A. Noriega." (SAC at 12.) Plaintiff alleges that defendant Noriega received approval from A. Traquina to have plaintiff flight-evacuated by helicopter to the John Muer Medical Center in Walnut Creek, California. (SAC at 12.) Plaintiff alleges that :

> [f]rom July 23, 2006 through August 4, 2006, plaintiff made dozens [of] complaints of pain to CSW officers and medical staff. [Defendants] A. Noriega and Dechant were medical staff assigned to ad seg, totally ignored plaintiff's request for medical care and walked past [plaintiff's] open door cell daily.

(SAC at 12.)

In December 2006, plaintiff allegedly informed defendant Noriega that plaintiff had "blood in his tarry stool." (SAC at 15.) On December 18, 2006, a fecal occult blood test was performed on plaintiff's stool, which tested positive. (Id.) Plaintiff was scheduled to have a colonoscopy on July 6, 2007, but it was cancelled and rescheduled to November 2007. (SAC at 16.) Plaintiff does not allege injury or damages as a result of the delayed colonoscopy, but claims the doctor who performed the colonoscopy told plaintiff that "it's been so long to get you

3

here, if you did have a problem, it's undetectable at this point." (SAC at 16.)

III.  Causes of Action

   Pursuant to the court's March 26, 2010 order, plaintiff stated a viable cause of action against defendant Noriega for deliberate indifference to a serious medical need (Claim III). (Dkt. No. 25 at 3.)

IV.  Motion to Dismiss

   Defendant Noriega moves to dismiss plaintiff's claims that defendant Noriega was deliberately indifferent to plaintiff's serious medical needs.

  A.  Legal Standards

   Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

### C. The Parties' Arguments

Defendant Noriega contends that plaintiff has failed to state a cognizable deliberate indifference claim under the Eighth Amendment because plaintiff "states no facts showing that Noriega consciously disregarded [plaintiff's] serious medical needs." (Dkt. No. 125-1 at 1.) Defendant argues that plaintiff alleged no facts demonstrating that defendant Noriega knew plaintiff had serious medical needs while under CSW, or that he ignored plaintiff's reports of bloody stools. Defendant contends that plaintiff's facts alleging defendant Noriega evaluated plaintiff after the alleged paraplegia and arranged for a helicopter evacuation "affirmatively refute" plaintiff's claims that defendant Noriega was deliberately indifferent. Finally, defendant Noriega points out that plaintiff alleges facts demonstrating that the colonoscopy, although delayed, ultimately revealed no medical problems. (Dkt. No. 125-1 at 2.)

In opposition, plaintiff argues that he alleged facts showing that defendant Noriega failed to summon medical care for plaintiff during the CSW. (Dkt. No. 129 at 2.) Plaintiff further contends that defendant Noriega was plaintiff's treating physician, and that despite being informed of blood in plaintiff's stool in December of 2006, plaintiff did not receive medical treatment for that condition until November 2007, about one year later. (Id.)

In reply, defendant contends that plaintiff failed to alleged facts showing that:
(1) Noriega knew or should have known that [plaintiff] had a

> serious medical condition; (2) Noriega rejected a request for medically necessary care; (3) Noriega observed [plaintiff] in any physical distress necessitating care.

(Dkt. No. 131 at 2.) As to plaintiff's complaints concerning blood in his stool, defendant Noriega contends that plaintiff failed to show that:

> (1) [plaintiff] needed treatment beyond the testing and colonoscopy he received; (2) Noriega ignored [plaintiff's] complaint or purposely delayed treatment; or (3) [plaintiff] suffered harm because his colonoscopy was delayed.

(Dkt. No. 131 at 3.) Defendant argues that plaintiff's allegation that he reported having blood in his stool is insufficient to raise an inference that plaintiff required medical intervention. (Id.) Defendant contends plaintiff alleged no facts suggesting defendant Noriega caused the colonoscopy to be delayed or denied plaintiff any other necessary treatment, or that the delay resulted in further injury or pain. (Dkt. No. 131 at 3-4.)

### D. Legal Standard for Eighth Amendment Claim

In order to state a claim for relief under the Eighth Amendment for inadequate prison medical care, plaintiff must allege "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

////

Whether a defendant had requisite knowledge of a substantial risk is a question of fact and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. Farmer, 511 U.S. at 842. While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Id. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Deliberate indifference may be shown by the way in which prison officials provide medical care, Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988), or "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003). Deliberate indifference in the medical context may also be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096. A mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

    E. Application

        i. CSW

Defendant's motion to dismiss plaintiff's claims concerning defendant Noriega's actions while plaintiff was under the CSW should be denied. Liberally construed, plaintiff states a cognizable claim that defendant Noriega was deliberately indifferent to plaintiff's serious medical needs during the CSW. Plaintiff alleges defendant Noriega was medical staff assigned to the ad seg unit where plaintiff was housed during the CSW. Plaintiff also alleges that from July 23, 2006, through August 4, 2006, plaintiff "made dozens [of] complaints of pain to CSW officers and medical staff." (SAC at 12.) In addition, plaintiff specifically alleges defendant Noriega "totally ignored plaintiff's request for medical care" and "walked past [plaintiff's] open

cell door daily." (Id.) Plaintiff alleges that he suffered back and neck pain, delusions and anxiety, high blood pressure and high cholesterol, stress and sleep deprivation (SAC at 7) during the eleven days he was held in CSW. Taking plaintiff's allegations as true, defendant Noriega walked by plaintiff's cell for eleven days, was assigned to provide medical care to the ad seg unit where plaintiff was housed, yet "totally ignored" plaintiff's request for medical care and complaints of pain. These allegations raise an inference that defendant Noriega was deliberately indifferent to plaintiff's serious medical needs. Jett, 439 F.3d at 1096. While defendant maintains that because defendant Noriega ensured plaintiff received emergent care when plaintiff allegedly collapsed in the cell demonstrates that Noriega was not deliberately indifferent, viewing this fact in the light most favorable to plaintiff, arguably defendant Noriega did not act until plaintiff presented with paraplegia, and acting after plaintiff allegedly sustained physical injury does not address defendant Noriega's mental state from July 23, 2006, through August 3, 2006.

Accordingly, defendant Noriega's motion to dismiss plaintiff's claim concerning care provided during the CSW should be denied.

### ii. Blood in Stool

Plaintiff fails to allege sufficient facts demonstrating that defendant Noriega was deliberately indifferent to plaintiff's test results showing plaintiff had blood in his stool. First, blood in the stool, without more, fails to rise to the level of serious medical need. Indeed, blood in the stool can be the result of hemorrhoids. See Israel v. Lee, 2012 WL 892160, *14 (N.D. Cal. 2012) (allegation that prison medical staff, including a defendant doctor, was incompetent for failing to test the blood in his stool was "insufficient, as a matter of law, to establish deliberate indifference.") Plaintiff fails to demonstrate that he suffered from a serious medical need because he had blood in his stool.[3] Second, plaintiff alleges that defendant Noriega ordered a colonoscopy for plaintiff. The fact that defendant Noriega ordered the colonoscopy demonstrates

---

[3] In the SAC, plaintiff notes that an unidentified Registered Nurse informed plaintiff that "if it's not at least a cup of blood it's nothing to worry about." (SAC at 16.)

1 that defendant Noriega did not exhibit the mental state of deliberate indifference.  Third, plaintiff
2 fails to allege facts demonstrating that defendant Noriega was responsible for the subsequent
3 delay in performing the colonoscopy.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).
4 Plaintiff's allegation that defendant Noriega was plaintiff's treating physician is insufficient,
5 without more, to raise an inference that defendant Noriega was responsible for the delay.  Fourth,
6 plaintiff fails to allege he sustained any injury as a result of the delay in the colonoscopy.  Mere
7 delay in medical treatment, without more, is insufficient to state a claim of deliberate medical
8 indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985).
9 Finally, it appears that plaintiff believed he should have received the colonoscopy sooner, which
10 demonstrates a difference of opinion with the treatment he received for the blood in his stool.  As
11 set forth above, a difference of opinion cannot serve as the basis for an Eighth Amendment
12 claim.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Accordingly, defendant Noriega's motion to dismiss plaintiff's claim concerning blood in his stool should be granted.[4]

V. Qualified Immunity

Defendant Noriega also contends that he is entitled to qualified immunity on both claims.  In light of the above recommendations, the court need not address the argument as to

---

[4] In his opposition to this claim, plaintiff asks the court "to allow him to amend his complaint so the Court can take supplemental jurisdiction over his state claim against Noriega." (Dkt. No. 129 at 2.)  Plaintiff did not identify the claim he seeks to add.  Moreover, plaintiff did not provide a proposed amended complaint.  As a litigant proceeding in forma pauperis, plaintiff's pleadings are subject to evaluation by this court pursuant to the in forma pauperis statute.  See 28 U.S.C. § 1915.  Because plaintiff did not submit a proposed amended complaint, the court is unable to evaluate it.  In fact, plaintiff has previously been granted leave to amend on two separate occasions.  Finally, because a pretrial scheduling order was filed on September 15, 2010, resolution of a motion to amend is governed by Rule 16 of the Federal Rules of Civil Procedure.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). "Once the district court filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 . . . that rule's standards controlled."  Id.  Rule 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4). Plaintiff failed to address the issue of good cause or his diligence in failing to earlier seek leave to amend.  Therefore, plaintiff's unsupported request for leave to amend is denied.

plaintiff's blood in stool claim. As to plaintiff's CSW claim, the court finds that defendant is not entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Resolving the defense of qualified immunity involves a two-prong analysis: courts look to whether the facts "show the officer's conduct violated a constitutional right," and "whether the right was clearly established" at the time of the alleged unlawful action. See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson.[5] As the Ninth Circuit has recognized:

> "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S. Ct. 2151. The key inquiry is whether a reasonable person could have believed his actions lawful at the time they were undertaken. Anderson v. Creighton, 483 U.S. 635, 646, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987).

Bull v. City and County of San Francisco, 595 F.3d 964, 1002 (9th Cir. 2010).

Viewing the record before the court in the light most favorable to plaintiff, as it must on this motion to dismiss, this court cannot find at this time that defendant Noriega is entitled to qualified immunity. It is clearly established that deliberate indifference to the serious medical needs of prisoners constitutes a violation of the Eighth Amendment. Estelle, 429 U.S. at 106. As set forth above, plaintiff's SAC states an Eighth Amendment claim against defendant Noriega insofar as it alleges deliberate indifference to plaintiff's serious medical needs during the CSW. Taking plaintiff's allegations as true, a reasonable medical doctor could not have believed

---

[5] The United States Supreme Court has held that courts may exercise "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. at 236.

that ignoring plaintiff's complaints of pain during an extended CSW was lawful.  Therefore, defendant Noriega is not entitled to dismissal on the basis of qualified immunity on this claim.

VI. <u>Conclusion</u>

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant Noriega's January 27, 2012 motion to dismiss (dkt. no. 125) be granted in part, and denied in part, as follows:

1. Defendant Noriega's motion to dismiss plaintiff's claim that defendant Noriega was deliberately indifferent to the blood in plaintiff's stool be granted; and

2. Defendant Noriega's motion to dismiss plaintiff's claim that defendant Noriega was deliberately indifferent to plaintiff's serious medical needs during the CSW be denied; and defendant Noriega be ordered to file an answer within twenty-one days from any order of the district court adopting these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 7, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

john1609.mtd3